# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAUL SMITH,<br><br>                 Plaintiff,<br><br>v.<br><br>ANTHONY WILLS,<br>TOBY MOHR,<br>LIEUTENANT CARON,<br>SERGEANT JAMES,<br>EGGERS,<br>KEVIN REICKERT,<br>LIEUTENANT KOCH,<br>KRCMAR,<br>MARTINEZ,<br>KNIGHT, and<br>DULANEY,<br><br>                 Defendants. | Case No. 24-cv-02554-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

      Plaintiff Paul Smith, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Menard Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). The Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.

### THE COMPLAINT[1]

      In the Complaint, Plaintiff alleges the following: Plaintiff was transferred from Western Illinois Correctional Center to Menard for disciplinary reasons on October 27, 2023. (Doc. 1, p. 3, 17). Menard Correctional Center (Menard) was built in 1878, and over the last hundred years, the

---

[1] The Court notes that parts of the Complaint are illegible and difficult to read.

building has severely deteriorated resulting in heating, plubming, and sanitation problems. (*Id.* at p. 2). Because prison officials have failed to maintain the building, the health and safety of the inmate population, including Plaintiff, has been compromised. (*Id.* at p. 2).

Upon his arrival at Menard, Plaintiff was placed in segregation in North 2 Cellhouse for twenty-four days. (Doc. 1, p. 3, 17). In segregation, he was forced to sleep on an unsanitary mattress that was torn in pieces and smelled. (*Id.*). Plaintiff spoke to Gallery Officer Knight and the Sanitation Officer Dulaney about his mattress, and they told him that they did not have another mattress to give him. (*Id.* at p. 17).

At some point Plaintiff was moved to East Cellhouse, where he is currently housed. While in East Cellhouse, Plaintiff has been subjected to the following conditions:

**Infestation of insects**

In East Cellhouse, there is a mass infestation of cockroaches, spiders, and other insects. (Doc. 1, p. 8). Occasionally, bug spray is sprayed along the outer walls and perimeters of the cells, but this treatment is ineffective, as the inside of the cells themselves are not sprayed, and the bug spray is sprayed infrequently. (*Id.*). Plaintiff has often complained to Lieutenant Caron, Sergeant James, Lieutenant Koch, Gallery Officer Martinez, Gallery Officer Krcmar, Sanitation Officer Eggers, and Warden Wills, and he was told that they were aware of the situation. (*Id.* at p. 9). Plaintiff also spoke twice to Assistant Warden of Operations Reickert about the cockroach problem. The Defendants, however, have failed to take any action to remediate the infestation. On March 14, 2024, Plaintiff woke up to find a dead cockroach lying on his pillow. Plaintiff mailed the cockroach along with a complaint letter to the governor's office and received an acknowledgement of receipt. In the letter, Plaintiff included complaints against Warden Wills. (*Id.*).

**Unsanitary living conditions**

The cells in East Cellhouse, including Plaintiff's cell, are dirty and unsanitary. (Doc. 1, p. 9). Plaintiff's cell is never properly cleaned, scrubbed, or sanitized, and Plaintiff is not provided adequate cleaning supplies. (*Id.* at p. 9, 11). He states that the amount of dust and dirt in the cells is overwhelming and causes an accumulation of mites and other micro-organisms. (*Id.* at p. 9-10). The fans mounted to the walls are covered and dirt and dust. (*Id.* at p. 16). When they are operating, the fans blow the dirt and dust into the air. (*Id.*). Plaintiff suffers from severe seasonal allergies, sinus issues, and eczema, which are treated with several different medications. (*Id.* at p. 10). Exposure to the dust, dirt, and micro-organism exacerbates his conditions and causes headaches. (*Id.* at p. 10, 16). The bunkbeds are covered in rust, which irritates Plaintiff's eczema. (*Id.* at p. 11-12). The rust causing extreme itching, and Plaintiff scratches himself to the point of causing bleeding. (*Id.* at p. 12).

Other areas of East Cellhouse, such as the cage area and bull pins, are soiled with large amounts of garbage and food. (*Id.* at p. 11). The shower area is also dirty and often has pairs of dirty underwear and garbage lying on the floor for weeks. (*Id.* at p. 3, 11). The shower area is contaminated with black mold and asbestos. (*Id.* at p. 14). Plaintiff states that due to the unsanitary state of the showers, he was diagnosed with a foot infection. (*Id.* at p. 12-13).

The food is delivered on food carts and racks that are (1) stained; (2) stuck with dried, old food; and (3) contain garbage. (Doc. 1, p. 12). These same carts are used to pass out clean laundry and pick-up trash. (*Id.*).

**Ventilation/Black Mold**

Black mold, asbestos, dirt, and standing water are present in the ventilation tunnels in East Cellhouse causing mold spores and bacteria to be blown into the cells. (Doc. 1, p. 13). The poor

ventilation system aggravates Plaintiff's sinus issues, allergies, and eczema and causes difficulty breathing. (*Id.*). Mold is also present in the ceiling of East Cellhouse. (*Id.* at p. 16).

**Plumbing**

The plumbing is in disrepair. (Doc. 1, p. 14). Plaintiff's toilet continuously breaks down and does not flush. The sink also does not work. More than five work orders have been submitted for Plaintiff's toilet and sink. Every time the sink and toilet malfunction, Plaintiff waits up to seven days to have the sink and toilet repaired. In the meantime, his toilet fills up with human waste. (*Id.*). Water also leaks from the back of the toilet and puddles at the base causing mold growth. (*Id.*).

**Flooding**

Whenever it rains, the roof leaks, and 1 gallery, where Plaintiff is housed, floods. (Doc. 1, p. 16). Neither the gallery officers, Krcmar and Martinez, nor the sanitation officer, Eggers, attempt to catch the water or prevent flooding by placing containers throughout the cellhouse. The accumulation of water contributes to the growth of mold in the cells. (*Id.*).

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:** Eighth Amendment claim against Knight and Dulaney for failing to provide Plaintiff with a clean mattress during his time in North 2 Cellhouse from October 27 – November 20, 2023.

**Count 2:** Eighth Amendment claim against Wills, Mohr, Caron, James, Eggers, Reickert, Koch, Krcmer, and Martinez for subjecting Plaintiff to unsanitary conditions in East Cellhouse.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the**

**Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

"The Eighth Amendment prohibits the States from subjecting prisoners to conditions of confinement amounting to cruel and unusual punishment." *Giles v. Godinez,* 914 F. 3d 1040, 1051 (7th Cir. 2019). To prevail on an Eighth Amendment claim based on constitutionally inadequate prison conditions, the plaintiff must show that (1) the conditions in the prison were objectively sufficiently serious " – *i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety," *Id.,* and (2) prison officials acted with deliberate indifference to those conditions. *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008) (internal citations and quotation marks omitted).

"[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981). Thus, the conditions experienced by an inmate must be severe to support an Eighth Amendment claim." *Perkins v. English,* No. 22-cv-1053-DRL-MGG, 2023 WL 2571717, at *1 (N.D. Ind. Mar. 20, 2023). "Some conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Gillis v. Litscher,* 468 F.3d 488, 493 (7th Cir. 2006). However, "[g]enerally speaking, challenges to conditions of confinement cannot be aggregated and considered in combination unless they have a mutually enforcing effect that produces the deprivation of a single, identifiable need such as food, warmth, or exercise." *Johnson v. Prentice*, 29 4 895, 904 (7th Cir. 2022). As to the second element of an Eighth Amendment claim, in order to sufficiently plead that a defendant acted with deliberate indifference, the plaintiff must allege facts to support the inference that "the official must have actually known of and consciously disregarded a substantial risk of harm." *Rasho v. Jeffreys*, 22

---

[2] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

F. 4th 703, 710 (7th Cir. 2022).

Plaintiff claims that for twenty-four days he was forced to sleep on a stained ripped mattress that had a foul order. (Doc. 1, p. 17). When he requested a new mattress from Knight and Dulaney, he was told that there were not any more mattresses available. (*Id.*). These allegations do not amount to an extreme deprivation that violates the Eighth Amendment. Additionally, Plaintiff has not sufficiently pled that Knight and Dulaney disregarded an excessive risk to his health by failing to provide him a different mattress. Accordingly, Count 1 is dismissed.

Count 2 will proceed against Warden Wills, Mohr, Caron, James, Eggers, Reickert, Koch, Krcmer, and Martinez.

### REQUEST FOR A PRELIMINARY INJUNCTION/TRO

In the Complaint, as a form of relief, Plaintiff requests an emergency injunction directing Defendants to immediately correct the constitutional violations and to move Plaintiff to a different prison, where he is not subjected to "inhuman, deplorable and hazardous conditions that pose a risk to his health and safety." (Doc. 1, p. 19-20). Plaintiff also seeks a temporary restraining order (TRO) preventing Defendants from retaliating against him once this case undergoes Section 1915A review. (*Id.* at p. 20).

An emergency injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). In order to obtain a preliminary injunction or a TRO, the plaintiff has the burden of demonstrating:

- a reasonable likelihood of success on the merits;
- no adequate remedy at law; and
- irreparable harm absent the injunction.

*Planned Parenthood v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). All three requirements must be satisfied before the Court can consider whether preliminary injunctive relief is warranted.

Plaintiff's requests fail to meet any of these requirements. Notably, he has no shown how he is at risk for irreparable harm or a reasonable likelihood of success on the merits of his claim. *See Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022) (in assessing a likelihood of success on the merits a court does not accept a plaintiff's allegations as true or give the plaintiff the benefit of all reasonable inferences in his favor). Furthermore, Plaintiff has not filed a separate motion for his requests pursuant to Federal Rules of Civil Procedure 7 and 65. For these reasons, the requests for a preliminary injunction and TRO are **DENIED.**

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a motion asking the Court to recruit counsel on his behalf. (Doc. 4). As a litigant in a civil case, Plaintiff has no right to counsel. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). However, a District Court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. §1915 (e)(1) (emphasis added). Plaintiff has not submitted any documentation to demonstrate to the Court that he is indigent. As he has paid the filing fee in full and is not proceeding *in forma pauperis* in this case, the Court has no basis for concluding that he is unable to afford counsel as is required by Section 1915(e). Thus, motion is **DENIED** without prejudice.

### MOTION FOR STATUS

The Motion for Status is **DEEMED moot** in light of this Order. (Doc. 7).

**DISPOSITION**

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** is **DISMISSED**. **COUNT 2** will proceed against Wills, Mohr, Caron, James, Eggers, Reickert, Koch, Krcmar, and Martinez. Plaintiff's requests for injunctive relief will proceed against Warden Wills in his official capacity. (Doc. 1, 5). Because there are no surviving claims against Knight and Dulaney, they are dismissed from this case, and the Clerk shall terminate them as defendants on the docket.

The Clerk is **DIRECTED** to enter the standard qualified protective order pursuant to HIPAA.

The Clerk of Court **SHALL** prepare for Wills, Mohr, Caron, James, Eggers, Reickert, Koch, Krcmar, and Martinez the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants should respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 20, 2025**

 _s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.